*In re* STORMS

Docket No. 104057. Submitted June 7, 1988, at Grand Rapids. Decided
    August 16, 1988.

Pursuant to a petition by the Department of Social Services, the
    Muskegon County Probate Court, Tom H. Linck, J., on Septem-
    ber 30, 1987, terminated the parental rights of Bruce and
    Ginger Storms to their daughter, Jammie Louise Storms, born
    June 6, 1986, based on their inability to properly care for their
    daughter due to their mental deficiency. The Storms appealed.

The Court of Appeals *held:*

MCL 712A.19a(c); MSA 27.3178(598.19a)(c), which provides
    for the termination of parental rights of parents unable to
    provide proper care because of mental illness or deficiency,
    precludes a termination of rights until a period of at least two
    years has elapsed, during which time mentally ill or mentally
    deficient parents may receive training or treatment and regain
    the custody of their children.

Reversed and remanded.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — MENTAL
    ILLNESS OR DEFICIENCY.

The statute providing for the termination of parental rights of
    parents unable to provide proper care because of mental illness
    or deficiency precludes a termination of rights until a period of
    at least two years has elapsed, during which time mentally ill
    or mentally deficient parents may receive training or treatment
    and regain the custody of their children (MCL 712A.19a[c];
    MSA 27.3178[598.19a][c]).

*Harold F. Closz, III,* Prosecuting Attorney, and
*Linda S. Kaare,* Assistant Prosecuting Attorney,
for petitioner.

*David W. Marra,* for respondents.

REFERENCES

Am Jur 2d, Parent and Child § 7, 34, 35.
Termination of parental rights, validity of state statute. 22 ALR4th
    774.

Before: MAHER, P.J., and MURPHY and R. B. BURNS,* JJ.

MURPHY, J. Respondents, Bruce and Ginger Storms, appeal as of right from an order of the probate court terminating parental rights to their daughter, Jammie Louise Storms, born June 6, 1986.

Shortly after Jammie's birth, petitioner sought to have Jammie taken away from her parents. A preliminary hearing was held on June 10, 1986. At that time, the referee determined that a petition should be authorized and Jammie would be placed in foster care. The petition alleged that respondents had neglected their child and that they were unable to properly care for Jammie because they suffered from irremediable mental deficiencies. MCL 712A.19a(c) and (e); MSA 27.3178(598.19a)(c) and (e). The formal hearing was held on July 21, 1986, at which time the trial court denied petitioner's request for permanent wardship. The court determined that Jammie should remain in foster care, and that respondents be evaluated and be given the aid of all appropriate programs and services, along with visitation of Jammie in their home. This would allow the court to better determine the best interest of the child.

A review hearing was held six months later on January 21, 1987. The parties then stipulated to the continuing jurisdiction of the court. However, petitioner requested, and the court ordered, that increased visitation be conditioned on respondents' continuing to abide by the agency-parent agreement and that they improve their attendance at parenting classes.

Approximately one year after Jammie's birth,

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

the Department of Social Services petitioned for permanent wardship and termination of parental rights. Two testimonial hearings were held in August, 1987, and the court took the matter under advisement. Then, on September 30, 1987, the court issued an opinion terminating respondents' parental rights because they were unable to provide proper care and custody of their child due to mental illness or deficiency. The court found the evidence to be clear and convincing that the mental deficiencies of respondents had existed for a considerable time, and that there was no reasonable likelihood that their condition would improve.

Since our decision is based on a fundamental issue which requires reversal, we need not address the other issues raised on appeal.

The controlling statute, MCL 712A.19a; MSA 27.3178(598.19a), provides in relevant part:

> Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
>        \*    \*    \*
>
> (c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child.

Respondents argue, as they did before the trial court, that the two-year period referred to in subsection (c) above is jurisdictional. That is, the trial court could not act under that subsection until two years had passed (during which time

respondents were unable to provide proper care and custody) *and* there was no reasonable expectation they would be able to assume such care and custody within a reasonable time.

The statute clearly requires, under subsection (c), that before the court can place a child in the permanent custody of the court "a parent of the child [must be found to be] unable to provide proper care and custody *for a period in excess of 2 years* because of mental deficiency or mental illness . . . ." (Emphasis added.) Since the lower court's order terminating respondents' parental rights was entered less than two years after the child's birth, the lower court erred.

We note that our holding is consistent with this Court's decision in *In re Youmans,* 156 Mich App 679; 401 NW2d 905 (1986), lv den 428 Mich 871 (1987). Nonetheless, we are not unmindful that there are contrary decisions from this Court on this issue. See *In re Smebak,* 160 Mich App 122; 408 NW2d 117 (1987), and *In re Bailey,* 125 Mich App 522; 336 NW2d 499 (1983). See also *In re Kellogg,* 157 Mich App 148; 403 NW2d 111 (1987); *In re Kenyatta Brown,* 139 Mich App 17; 360 NW2d 327 (1984); *In re Sharpe,* 68 Mich App 619; 243 NW2d 696 (1976), lv den 399 Mich 882 (1977). These cases seem to rely on an order from the Supreme Court in *In re Kidder,* 393 Mich 819 (1975), rev'g *In re Kidder,* 59 Mich App 204; 229 NW2d 380 (1975). However, our reading of *Kidder* does not suggest to us that in that case the trial court and appellate courts were either construing or relying on subsection (c) of the statute pertaining to the two-year period regarding mental deficiency or mental illness. Therefore, we do not believe that our ruling is inconsistent with the Supreme Court's order in *Kidder.*

We do not hold that the probate court always

*lacks jurisdiction* to make a final determination and order the placement of a child in the permanent custody of the court. Rather, we are simply holding that the court has erred by making its decision based on subsection (c) before the expiration of the two-year period.

For example, a probate court has the jurisdiction, assuming the facts support such a determination, to find that the parent or guardian is unable to provide a fit home for the child by reason of neglect, and not be bound by the requirement of waiting two years. MCL 712A.19a(e); MSA 27.3178(598.19a)(e).

We conclude that the language of subsection (c) is clear. We do not believe it is for this Court to change the clear meaning of the statute. Rather, we leave that decision to the Legislature if it is so inclined.

It must be remembered that the state bears the burden of proving by clear and convincing evidence that termination of parental rights is warranted. *In re Bidwell,* 129 Mich App 499, 504; 342 NW2d 82 (1983). There is no reason to believe that many persons who suffer from various forms of mental deficiency or mental illness are not able to lead relatively normal and productive lives. There may well be many who are able to assume the responsibilities for the care and custody of their children. We believe that the Legislature was aware of this when it adopted the clear language of subsection (c).

To this end, we find particularly persuasive Judge MOES' well-reasoned dissent in *In re Bailey, supra,* p 531 where he said:

> In my view, the statutory provision requiring the two-year period of delay reflects a legislative determination that mentally ill or mentally defi-

cient persons who are unable to initially provide adequate care for their children should be given a period of time in which to receive treatment or education and training which will enable them to provide such care. It further reflects an unwillingness on the part of the Legislature to permit the probate court to make a finding, prior to the time the two-year period expires, that such treatment, training, and education will be useless.

Accordingly, we remand this matter because the probate court, in relying on subsection (c) of the statute, acted prematurely in terminating respondents' parental rights.

Reversed and remanded for proceedings consistent with this opinion.